1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

JAMES O'NEIL WIGGIN,

8

Plaintiff,

v.

9

RICHARD ROBIDEAU, et al.,

10

Defendants.

11

NO:  CV-12-5046-RMP

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

12

**BEFORE THE COURT** are motions for summary judgment filed by

13

Defendants Richard Robideau, Kevin Lightbody, and Joseph Goodman, ECF No.

14

60, and Plaintiff James O'Neil Wiggin, ECF No. 93.  The motions were heard

15

without oral argument.  Defendants Robideau, Lightbody and Goodman are

16

represented by Washington State Assistant Attorneys General Candie M. Dibble

17

and Kevin C. Elliott.  Plaintiff is appearing in this matter pro se.  The Court has

18

reviewed the briefing, the supporting documentation and the file, and is fully

19

informed.

20

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

Plaintiff James O'Neil Wiggin is a prisoner in the custody of the Washington State Department of Corrections.  At all times relevant to this suit Plaintiff was incarcerated at the Coyote Ridge Corrections Center (CRCC).  Defendants Richard Robideau, Joseph Goodman, and Kevin Lightbody were each employed at the CRCC during the time period relevant to this suit.

Plaintiff alleges that he was having difficulty getting prison staff to make copies of his legal documents for him, and filed a grievance on December 19, 2011, relating to this issue.   Plaintiff further alleges that a meeting was then held to address his complaint.

Plaintiff claims that after the meeting, he attempted to make photocopies on January 5, 2012, but that prison staff refused to make the photocopies because Plaintiff was indigent.  Plaintiff asserts that prison policy required that the photocopies be made for indigent prisoners and that staff was refusing to make the copies because of his earlier complaint.  Plaintiff admits that the photocopies were eventually made as requested on January 9, 2012.  Plaintiff also alleges that he suffered retaliation in the form of a cell search where his legal documents were allegedly strewn about his cell.  ECF No. 19.

Plaintiff's Amended Complaint states causes of action for denial of equal protection and for First Amendment retaliation.  ECF No. 19, at 3-4, 23-25.

Plaintiff also appeared to allege that Defendants denied his right to access the courts, though this was not specifically enumerated as a separate cause of action in the Amended Complaint. *See* ECF No. 19, at 25. At the summary judgment stage, Plaintiff chose to abandon his equal protection claim, clarified that he had made no claim for denial of access to the courts, and specified that the only claim that he is pursuing is for retaliation. ECF No. 91 at 16-17, 24; ECF No. 100, at 5.

ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

1    (1986).  If the moving party meets this challenge, the burden then shifts to the non-

2    moving party to "set out specific facts showing a genuine issue for trial." *Id.* at

3    324 (internal quotations omitted).  The nonmoving party "may not rely on denials

4    in the pleadings, but must produce specific evidence, through affidavits or

5    admissible discovery material, to show that the dispute exists." *Bhan v. NME*

6    *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  In deciding a motion for

7    summary judgment, the court must construe the evidence and draw all reasonable

8    inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*,

9    809 F.2d at 631-32.

10         Defendants contend that Plaintiff has not exhausted his claims under the

11    PLRA and that Plaintiff cannot establish a viable claim for First Amendment

12    retaliation.  Defendants additionally contend that Plaintiff cannot establish a

13    separate claim for denial of access to the courts or equal protection, but the Court

14    need not reach these arguments because Plaintiff has abandoned those claims.

15    ECF No. 91 at 16-17, 24; ECF No. 100, at 5.  For his part, Plaintiff asserts that he

16    did exhaust his administrative remedies as to his retaliation claim and that he is

17    entitled to judgment as a matter of law on that claim.

18    **A. Exhaustion of administrative remedies under the PLRA**

19         The Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104–134,

20    110 Stat. 1321, as amended, 42 U.S.C. § 1997e *et seq.*, provides that "[n]o action

1  shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

2  other Federal law, by a prisoner confined in any jail, prison, or other correctional

3  facility until such administrative remedies as are available are exhausted." 42

4  U.S.C. § 1997e(a).  Exhaustion is mandatory under the PLRA and is no longer left

5  to the discretion of the district court.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)

6  (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).  "Prisoners must now exhaust

7  all 'available' remedies, not just those that meet federal standards."  *Id.*  Even

8  when a prisoner seeks relief that cannot be granted by the administrative process,

9  such as monetary damages, the prisoner must still exhaust available administrative

10  remedies.  *Id.* (citing *Booth*, 532 U.S. at 734).

11      A prison's own grievance process determines how detailed a grievance must

12  be to satisfy the PLRA.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)

13  (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  When a prison's grievance

14  procedures are silent or incomplete as to the required level of factual specificity, "a

15  grievance suffices if it alerts the prison to the nature of the wrong for which redress

16  is sought."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong*

17  *v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

18      The Washington State Department of Corrections has an Offender Grievance

19  Program that was implemented on a department-wide basis in 1984.  ECF No. 66

20  at 2.  The Grievance Program, DOC Policy 550.100, allows inmates to file

1    grievances on a wide range of issues related to their incarceration, such as prison

2    policies; the application of prison policies; and the actions of prison staff,

3    specifically including actions in the form of "retaliation against the grievant for

4    his/her good faith participation in the grievance program."  ECF No. 66 at 12.

5         To file a grievance an inmate must complete an Offender Complaint form

6    and submit the form to the Grievance Coordinator for the particular facility.  ECF

7    No. 66 at 11, 13.  The grievance is then subject to a four-level grievance process,

8    beginning with seeking an informal resolution at the local prison facility and

9    ending with an appeal to Department of Corrections headquarters.  ECF No. 66 at

10   13-14.  At the time of their entry into the Department of Corrections, each inmate

11   is provided with information regarding the Grievance Program.  ECF No. 66 at 2,

12   15-59.

13        The Court has carefully reviewed Plaintiff's grievance record in this case.

14   Plaintiff filed a grievance on December 19, 2011, alleging that correctional staff,

15   including "COA Salizar," who is not a Defendant in this case, were denying

16   Plaintiff access to the copy machine and thus prohibiting him from obtaining

17   copies of his legal documents.  In response to the grievance, Plaintiff was told to

18   "work with your counselor and CUs on your legal needs."  Plaintiff did not exhaust

19   his administrative remedies on this grievance.  ECF No. 66-3.  However, Plaintiff's

20   failure to exhaust this grievance would not be fatal to his claim before the district

court, as his allegations are that he was later retaliated against by CRCC staff for

filing the December 19, 2011, grievance.

Plaintiff next filed a series of four grievances on January 5, 2012, and

January 6, 2012. These four grievances were combined into one grievance file for

the purposes of the grievance process. Plaintiff did exhaust his administrative

remedies as to these grievances. ECF No. 66 at 5-6.

Two of the four grievances filed in this time period focus on Defendants

Robideau, Goodman, and Lightbody's alleged refusal to make Plaintiff legal

copies because of his status as an indigent. These grievances allege that

Defendants were violating DOC policy by failing to make Plaintiff's legal copies

as requested, but made no mention of retaliation for prior grievances. ECF No. 66-

4 at 14-15. A third grievance might be read as alerting prison authorities to

possible retaliation because Plaintiff alleged that he "had filed a grievance about

having to deal with drama and resistance by G-unit staff" and that "now they are

refusing to make copies for me." ECF No. 66-4, at 12. However, Plaintiff did not

identify any specific staff members as required for prisoner grievances involving

allegations of staff misconduct or retaliation. ECF No. 66-2 at 10, 17.

A fourth grievance filed on January 5, 2012, does specifically name

Defendant Lightbody, references Plaintiff's filing of an earlier grievance regarding

the photocopying issue, and alleges that, in response to Plaintiff's prior grievance,

1    "Lightbody basically said 'go ahead and sue us' and he has injected himself into

2    my business and has convinced my counselor that they don't have to do my legal

3    copies" despite alleged DOC policy to the contrary.  ECF No. 66-4 at 13.  The

4    Court finds that this grievance alerted prison authorities as to the nature of

5    Plaintiff's retaliation claim regarding Defendant Lightbody's alleged motive in

6    preventing Plaintiff from obtaining legal copies on January 5, 2012.  However, the

7    grievance does not name any other Defendants and makes no mention of cell

8    searches or alleged threats that Plaintiff would be placed in segregation.

9    Therefore, the Court finds that Plaintiff did not exhaust his administrative remedies

10   as to Defendants Robideau or Goodman, and as to any claims based on anything

11   other than preventing Plaintiff from obtaining legal photocopies on January 5,

12   2012.

13          Plaintiff points to a series of "offender's kites," which are essentially notes

14   directed to DOC staff, and letters written to DOC staff in which he complained of a

15   variety of matters after filing the four grievances on January 5, 2012, and January

16   6, 2012.  ECF No. 95-1 at 13-38.  Plaintiff alleges that these communications

17   should be read with his January 5 and 6 grievances to satisfy the PLRA's

18   administrative exhaustion requirement.  However, the DOC's grievance procedures

19   specify that "kites" or letters are part of the informal process that a prisoner is

20   required to go through before filing a formal grievance.  ECF No. 66-2 at 9.  If the

prisoner is not satisfied with the response he receives at the informal level then he must appeal through the formal grievance process to exhaust his administrative remedies, which Plaintiff did not do here.

Moreover, the DOC's grievance procedures specify that while new or additional information may be given regarding the original issue in a prisoner's grievance, "new issues may not be added." ECF No. 66-2, at 29. Plaintiff attempted to add a variety of new issues through his "kites" and letters, including allegations of retaliation by persons other than Defendant Lightbody and in manners other than by preventing Plaintiff from obtaining legal copies. Plaintiff explains that he did not file new grievances because he "didn't see any point in sending in more complaints as I had already let staff know of the misconduct by G-unit staff." ECF No. 95 at 14. Plaintiff thus admits that he did not follow the official grievance process as to claims of retaliation by persons other than Defendant Lightbody and in a manner other than preventing Plaintiff from obtaining legal copies.

In addition to the above grievances, Plaintiff filed a grievance on March 5, 2012, alleging that he was denied access to the law library while in segregation and that prison staff had seized his legal documents. However, this claim was not administratively exhausted. The record establishes that Plaintiff did not file a grievance related to the alleged search of his cell on January 6, 2012. ECF No. 66

at 6; ECF No. 91 at 11.  Nor did Plaintiff file a grievance related to the alleged

search of his cell on February 7, 2012, and Plaintiff states that he has not pressed

any claim relating to this alleged cell search.  ECF No. 66 at 6; ECF No. 91 at 10-

11.  Further, Plaintiff has not alleged that he was denied access to the law library

while he was in administrative segregation, and Plaintiff has stated that the alleged

denial of access is a separate issue that arose after the time period relevant to his

suit.  ECF No. 66 at 7; ECF No. 91 at 11.  Finally, the record establishes that

Plaintiff did not file a separate grievance alleging that Defendant Robideau had

threatened to place him in segregation in relation to the issue of legal photocopies.

ECF No. 66 at 6.

          The Court thus finds that the only retaliation claim Plaintiff exhausted was

for his January 5, 2012, grievance against Defendant Lightbody for allegedly

preventing Plaintiff from obtaining legal copies in retaliation for his having filed

an earlier grievance on the issue.  As for claims of retaliation against Defendants

Robideau and Goodman, and for claims based on anything other than preventing

Plaintiff from obtaining legal copies on January 5, 2012, Plaintiff failed to properly

file a grievance and thereby alert prison authorities "to the nature of the wrong for

which redress is sought."  *Griffin*, 557 F.3d at 1120; *see also Jones v. Lewis*, 334

Fed. Appx. 66 (9th Cir. 2009) (unpublished decision) (affirming dismissal of

retaliation claim where plaintiff's grievance did not indicate that defendants'

actions were retaliatory).

**B. First Amendment retaliation**

Prisoners have a First Amendment right to file prison grievances. *Rhodes v.

Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (quoting *Bruce v. Ylst*, 351 F.3d 1283,

1288 (9th Cir. 2003)). Retaliation against a prisoner for exercising this right "is

itself a constitutional violation, and prohibited as a matter of 'clearly established

law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes*,

408 F.3d at 566; *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)). A

viable claim for First Amendment retaliation in the prison context has five basic

elements: "(1) An assertion that a state actor took some adverse action against an

inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

chilled the inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal." *Id.* (quoting *Rhodes*, 408

F.3d at 567-58). A retaliation claim "may assert an injury no more tangible than a

chilling effect on First Amendment rights." *Id.* at 1269-70 (quoting *Gomez v.

Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)). An adverse action has a "chilling

effect" where it would "chill or silence a person of ordinary firmness from future

First Amendment activities." *Id.* at 1271 (quoting *Rhodes*, 408 F.3d at 568-59).

Where a plaintiff fails to allege a chilling effect on his First Amendment rights, he

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 11

1    may still state a claim if he alleges that he suffered "some other harm."  *Id.* at 1269

2    (quoting *Rhodes*, 408 F.3d at 568 n.11).

3        Defendants contend that Plaintiff has not demonstrated a viable retaliation

4    claim because he has failed to show that Defendants took an adverse action against

5    him and failed to show that Defendants acted with a retaliatory motive.  Plaintiff

6    asserts that he is entitled to judgment as a matter of law on his retaliation claim.

7        It is undisputed that prison officials refused to process Plaintiff's photocopy

8    request for legal documents on January 5, 2012, but that Plaintiff's photocopy

9    request was then processed on January 9, 2012.  ECF Nos. 61, 95.  Plaintiff

10   attributes the delay  to Defendants' desire to retaliate against him for filing the

11   December 19, 2011, grievance related to photocopies.  Defendants assert that the

12   delay was necessary to determine whether Plaintiff's request fit within DOC policy

13   regarding photocopies for indigent prison inmates.  The Court need not examine

14   the issue of alleged retaliatory motive, however, because it determines that a four-

15   day delay in processing photocopies is not, in and of itself, adequate to establish an

16   adverse action that chills a prisoner's First Amendment rights.

17       Plaintiff has not alleged that he suffered any actual harm from the delay.  He

18   does not contend, for example, that he missed a filing deadline or that his legal

19   cases were otherwise prejudiced by the delay.  Plaintiff must prove that the alleged

20   adverse action, a four-day delay in processing his photocopy request, would "chill

or silence a person of ordinary firmness from future First Amendment activities." *E.g.*, *Brodheim*, 584 F.3d at 1271.  The Court concludes that a slight delay in processing a prisoner's photocopy requests, without any other harm resulting from the delay, would not chill or silence a person of ordinary firmness from engaging in future First Amendment activities.  Because Plaintiff has suffered no adverse impact, he may not press a claim for First Amendment retaliation.  *See Scott v. Kelly*, 107 F. Supp. 2d 706, 708-09 (E.D. Va. 2000) (determining that prisoner could not press a retaliation claim where prison officials refused to provide photocopies for habeas corpus proceeding, where prisoner received the photocopies a short time later and suffered no adverse effect from the delay).

Therefore, Defendant Lightbody is entitled to summary judgment on the First Amendment claim for retaliation that Plaintiff did pursue to exhaustion through the available administrative remedies.  This claim is dismissed with prejudice.  Plaintiff's remaining claims that he did not exhaust are dismissed without prejudice.  *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

Accordingly, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, **ECF No. 60**, is **GRANTED,** and Plaintiff's motion for summary judgment, **ECF No. 93**, is **DENIED**.

1    The District Court Clerk is directed to enter this Order, enter judgment

2    accordingly, provide copies to counsel and to pro se Plaintiff, and **close this case**.

3        **DATED** this 18th day of November 2013.

4

5                                _____s/ Rosanna Malouf Peterson_____

6                                ROSANNA MALOUF PETERSON
                                 Chief United States District Court Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 14